**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**GREASER ET AL.,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 1:25-CV-112 (KLEEH)**

**PRESTON COUNTY BOARD OF EDUCATION ET AL.,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT CASSANDRA SISLER'S MOTION TO DISMISS [ECF NO. 11]**

Pending before the court is Defendant Cassandra Sisler's partial motion to dismiss the Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) [ECF No. 11]. For the reasons that follow, Defendant Cassandra Sisler's Partial Motion to Dismiss [ECF No. 11] is **DENIED IN PART** and **GRANTED IN PART.**

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiffs Trella Greaser and William Greaser, both Individually and as Guardian and Next Friend of U.G., a minor ("Plaintiffs"), filed their Complaint in the Circuit Court of Preston County. ECF No. 1. Defendants Preston County Board of Education ("PCBOE") and Cassandra Sisler ("Ms. Sisler") removed the case to this Court on October 20, 2025. Id.

Plaintiffs filed their Amended Complaint on November 20, 2025. ECF No. 8. Plaintiffs allege five causes of action:

- Count I: Negligent Hiring, Retention, Training, and Supervision (against PCBOE)
- Count II: Assault (against Ms. Sisler)
- Count III: Battery (against Ms. Sisler)
- Count IV: Intentional Infliction of Emotional Distress ("IIED") (against Ms. Sisler)
- Count V: Violation of 42 U.S. Code § 1983 (against all Defendants)

Ms. Sisler filed the subject Partial Motion to Dismiss the Amended Complaint on December 4, 2025. ECF No. 5.[1] Ms. Sisler moved to dismiss three of the four counts alleged against her (Count II, Count III, and Count IV), as well as Plaintiffs' request for punitive damages and Plaintiffs Trella and William Greaser's claims for filial consortium and emotional distress damages. ECF No. 11. In response, Plaintiffs ask this Court to deny Ms. Sisler's Partial Motion to Dismiss in its entirety. ECF No. 13.

## II. FACTUAL BACKROUND[2]

This case arises out of alleged improper and wrongful conduct concerning a teacher and her minor student in October of 2023. Plaintiffs allege that Ms. Sisler, Plaintiff U.G.'s teacher and an employee of Defendant PCBOE, "used duct tape to cover Plaintiff

[1] The remaining Defendant, PCBOE, filed an Answer to the Amended Complaint on December 4, 2025. ECF No. 10.

[2] The following facts are taken from the Amended Complaint. For purposes of deciding this motion, the Court assumes well-pled facts are true.

U.G.'s mouth and bind his wrists." Amended Compl., ECF No. 8, at ¶ 7. Plaintiffs further allege that on four consecutive school days, Ms. Sisler required Plaintiff U.G. "to perform physical labor such as moving chairs within the classroom while bound with duct tape" in front of the entire classroom. Id. at ¶¶ 9-13. According to Plaintiffs, U.G. sustained injury when the duct tape was removed. Id. at ¶ 12. Ms. Sisler and a teacher's aide were the only two adults that witnessed the alleged conduct. Id.

At some point during those four days, Plaintiff U.G. reported Ms. Sisler's conduct to the school principal. The principal allegedly told Plaintiff U.G. to "return to class," and took no further action regarding U.G.'s report. Id. at ¶ 13. Plaintiffs Trella Greaser and William Greaser learned of Ms. Sisler's alleged conduct and made a report to both the school and the West Virginia State Police. Id. at ¶ 14. Ms. Sisler's alleged conduct was also recorded by another student. Id. In its policy manual, PCBOE prohibits certain conduct by teachers directed towards students. Id. at ¶ 20 n.2. This includes, but is not limited to, the following:

- hitting or striking a student on their physical person;
- requiring physical activity as a punishment (this does not apply to physical activity within the structure and context of extracurricular activities);
- use of noxious stimuli (e.g., pepper spray), denial of food or water, or other

negative physical actions to control behavior; and

- seclusion - a removal in which a student is left unsupervised in any space as an intervention or consequence to inappropriate behavior.

Id.

In June of 2024, Ms. Sisler was indicted for four counts of "child neglect creating risk of bodily injury," pursuant to W. Va. Code § 61-8D-4(d)(1). ECF No. 8, at ¶ 17. Ms. Sisler later pled guilty to a lesser charge based on the same facts. Id.

Plaintiffs insist that U.G. was not an unruly or "disorderly" student as defined under W. Va. Code § 18A-5-1(c), id. at ¶ 8, and that Ms. Sisler's actions constituted "physical and emotional abuse" because they were "brutal, demeaning, and harmful." Id. at ¶¶ 14, 15. The extent of Plaintiffs' claimed damages include "emotional distress, medical expenses, loss of enjoyment of life, pain and suffering, and loss of parental consortium." Id. at ¶ 16.

## III. LEGAL STANDARD

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal

conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

## IV. DISCUSSION

For the reasons discussed below, the Court **DENIES IN PART** and **GRANTS IN PART** the partial motion to dismiss. It **DENIES** the motion as to Count II: Assault and Count III: Battery as they pertain to Ms. Sisler, as well as **DENIES** the motion to dismiss as to punitive damages and emotional distress damages for Plaintiff U.G. only. The Court **GRANTS** the motion as to Count IV: IIED as it pertains to Ms. Sisler, as well as **GRANTS** the motion to dismiss as to Trella

and William Greaser's claims for filial consortium. To the extent, Plaintiffs William and Trella Greaser's claims are all derivative of the filial consortium claim, they are hereby **DISMISSED** as plaintiffs in their individual capacity.

**A. The Court DENIES the motion to dismiss the assault and battery claims because Plaintiffs sufficiently pled the elements of these claims, Ms. Sisler's conduct was not privileged, and Ms. Sisler is not immune from liability.**

Plaintiffs have sufficiently alleged actions for assault and battery. First, Plaintiffs provided enough detail and factual allegations to support their claims for Ms. Sisler's tortious conduct. Second, while governmental entities and their employees enjoy statutory immunity, Ms. Sisler's alleged malicious, bad faith, or wanton and reckless conduct disqualifies her from statutory immunity. Finally, Ms. Sisler's alleged conduct exceeds her privilege to use reasonable force against students.

**1. Plaintiffs' allegations of assault and battery contain enough specific, factual support to survive a motion to dismiss.**

In West Virginia, a person is liable for assault if (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) "the other is thereby put in such imminent apprehension." W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 495 (W. Va. 2004). "If the plaintiff never perceived the harmful or offensive contact before it happened, no assault

occurred." Crawford v. Daniels, No. 2:23-cv-00585, 2024 WL 1895105, at *7 (S.D. W. Va. Apr. 30, 2024) (citation omitted).

A person is liable for battery if (1) "he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) "a harmful contact with the person of the other directly or indirectly results." Stanley, 602 S.E.2d at 494.

When "evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Courts in this District have held that battery is sufficiently pled when the complaint alleges specific actions that were intended to cause and did cause harmful contact. See, e.g., Conklin v. Jefferson Cnty. Bd. of Educ., 205 F.Supp.3d 797, 819 (N.D.W. Va. 2016) (finding allegations of "choking and pushing the plaintiff against a bookcase" to be sufficient for pleading a battery); Leonard v. Starkey, No. 1:14-cv-42, 2015 WL 8474533, at *11 (N.D.W. Va. Dec. 8, 2015) (finding that battery was sufficiently pled where the complaint alleged defendants "forcibly pulled [plaintiff] outside, handcuffed him, and choked him").

Ms. Sisler argues that Plaintiffs failed "to plead the essential factual elements underlying" the assault and battery claims. ECF No. 11. Specifically, she disputes the existence of

the intent element of Plaintiffs' tort claims. ECF No. 11-1. In response, Plaintiffs insist that Ms. Sisler's "affirmative and intentional conduct satisfies the elements of both assault and battery." ECF No. 13. ECF No. 13. According to Plaintiffs, the intent element was demonstrated by Ms. Sisler's repeated conduct "on at least four separate occasions." Id.

Here, the Court agrees with Plaintiffs. When viewed in the light most favorable to Plaintiffs, the facts alleged in the Amended Complaint are sufficiently specific. Plaintiffs alleged - on particular dates - that Ms. Sisler used duct tape to cover U.G.'s mouth, forced him to move chairs within the classroom, and caused injury to him when the duct tape was removed. ECF No. 8. In doing so, Plaintiffs sufficiently alleged a claim for battery against Ms. Sisler.

By pleading that Ms. Sisler used duct tape to cover Plaintiff U.G.'s wrists and mouth, see Amended Compl. ¶¶ 9-12, Plaintiffs sufficiently alleged her intent to cause a harmful or offensive contact. Furthermore, the alleged conduct occurred over a period of four days, which bolsters Ms. Sisler's intentions. The resulting alleged contact was both harmful, in that it caused physical injury to Plaintiff U.G., and offensive, because "[t]hese actions occurred in view of the entire classroom." Id. Like the plaintiffs in Conklin and Leonard whose allegations of "choking and pushing . . . against a bookcase" and "forcibly pull[ing], handcuff[ing],

and chok[ing]" were sufficient to plead battery, here Plaintiffs' allegations of "us[ing] duct tape to cover Plaintiff U.G.'s mouth and bind his wrists . . . [and] forc[ing] Plaintiff U.G. to perform physical labor . . . while bound with duct tape" is specific enough to state a cause of action for battery.

The same is true for Plaintiffs' assault claim. Plaintiffs alleged that Ms. Sisler "placed the victim, Plaintiff U.G., in the reasonable apprehension of imminent harmful contact by threatening, preparing, and applying unlawful corporal punishment" in the form of the duct taping and physical labor. ECF No. 8, at ¶ 37. As discussed above, Ms. Sisler intended to cause the contact. Thus, the factual allegations were specific enough to allege an assault.

**2. Ms. Sisler has no statutory immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act because her conduct falls into at least one of the exceptions to immunity.**

Ms. Sisler argues that even if she had engaged in tortious conduct, she is immune under the West Virginia Governmental Tort Claims and Insurance Reform Act (the "Act"). However, this argument fails because Ms. Sisler's alleged conduct falls into at least one of the three exceptions for statutory immunity.

"[I]n resolving a motion to dismiss, the court is limited to the well-pleaded allegations of the complaint itself . . . ." Folse v. Huntington, No. 3:22-cv-00415, 2023 WL 6566575, at *2 (S.D. W.

Va. Mar. 8, 2023)(citing Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016)). "[W]hen a civil claim implicates statutory immunity, the court must insist on a heightened pleading standard." Monongalia Cnty. Comm'n v. Stewart, 914 S.E.2d 677, 692 (W. Va. 2024). An employee of a political subdivision is immune from liability unless one of the following applies:

> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> (3) Liability is expressly imposed upon the employee by a provision of this code.

W. Va. Code § 29-12A-5(b)(1)-(3). The Supreme Court of Appeals of West Virginia has held that in the context of this statute, the terms "willful," "wanton," and "reckless" mean that:

> the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

Holsten v. Massey, 490 S.E.2d 864, 877 (W. Va. 1997).

To meet this standard, Plaintiffs must "[show] by specific allegations that the immunity does not apply." Stewart, 914 S.E.2d

at 692. The court will consider "whether the facts alleged in [the] complaint, and the inferences arising from them, when viewed most favorably to [Plaintiffs], convey that [Defendant]'s 'acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.'" Id. (emphasis added). These allegations must be "sufficiently specific to communicate" Plaintiffs' claims. Id. at 693. However, the Federal Rules of Civil Procedure permit "[m]alice, intent, knowledge and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b); but see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 377 (4th Cir. 2012) ("G]enerally' is a relative term. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid — though still operative — strictures of Rule 8.").

Ms. Sisler first argues that as an employee of a political subdivision, she is immune from liability, and none of the statutory exceptions apply. ECF No. 11-1. In fact, Ms. Sisler claims "there is no reason to conclude that [she] is not entitled to immunity . . . ." Id. Second, by failing to state that Ms. Sisler's conduct was manifestly outside of the scope of her employment, Ms. Sisler argues, Plaintiffs have ignored the precise language of the statute. ECF No. 14. Finally, Ms. Sisler rejects

Plaintiffs allegations as legal conclusions that are insufficient to overcome a Rule 12(b)(6) motion. Id.

In contrast, Plaintiffs argue, pursuant to W. Va. Code § 29-12A-5(b)(1)–(3), that Ms. Sisler is not immune from liability because (1) Ms. Sisler exceeded the scope of her employment; (2) Ms. Sisler acted maliciously, or alternatively, in a wanton and reckless manner; and (3) liability is expressly imposed upon Ms. Sisler by W. Va. Code § 18A-5-1(f), which prohibits corporal punishment of any student by a teacher. ECF No. 8.

Here, the Court agrees with Plaintiffs that Ms. Sisler's alleged conduct falls into all of the exceptions outlined in W. Va. Code § 29-12A-5(b). First, as discussed supra, Ms. Sisler's alleged conduct falls well outside the scope of reasonable discipline.

Second, Ms. Sisler's alleged actions would constitute malice because she intended to bind and restrain Plaintiff U.G. without regard for the risk of injury. Forcing a student to perform physical labor while bound at the mouth and wrists creates an exceptional risk of harm. Ms. Sisler argues that Plaintiffs "merely restate and reemphasize their bare legal assertions." ECF No. 14. However, because inferences are made in favor of Plaintiffs and Plaintiffs have properly pled a cause of action for assault and battery, Ms. Sisler's argument fails. Further, malicious intent

may be alleged generally, thereby making Plaintiffs' allegations sufficient to survive a motion to dismiss.

Third, perhaps the most applicable exception to Ms. Sisler's conduct is W. Va. Code § 29-12A-5(b)(3), which imposes liability upon the tortfeasor through W. Va. Code § 18A-5-1(f), which expressly prohibits corporal punishment of any student by a school employee. There is little doubt that the conduct alleged in the Complaint – forcible binding of a student's mouth and wrists and mandatory performance of physical labor while bound – falls within the realm of corporal punishment. See Smith v. W. Va. State Bd. of Educ., 295 S.E.2d 680, 687 (W. Va. 1982).

**3. Ms. Sisler's conduct was not privileged because the alleged act of restraining a student is excessive and unreasonable.**

Lastly, Ms. Sisler argues that public school teachers in West Virginia possess a certain privilege to use reasonable force against disruptive students. While this is true, Ms. Sisler's alleged forcible use of restraints on Plaintiff U.G., if true, qualifies as excessive and unreasonable.

An activity which would normally subject a person to liability for assault or battery may not constitute a tort if the actor is privileged to engage in the conduct. Miller v. Rubenstein, No. 2:16-cv-05637, 2018 WL 736044, at *16 (S.D.W. Va. Feb. 6, 2018). As Ms. Sisler correctly suggests, teachers carry a privilege to use "such force as [the] teacher or administrator 'reasonably

believes to be necessary for the child's proper control, training, or education.'" Ingraham v. Wright, 430 U.S. 651, 661 (1977) (emphasis added).

However, West Virginia law prohibits "[c]orporal punishment of any student by a school employee." W. Va. Code § 18A-5-1(f). Teachers who use "excessive or unreasonable" force to punish their students waive their privilege and will be subject to civil liability. Ingraham, 430 U.S. at 661. For instance, the use of restraints on a student, even by a police officer, "is not reasonably expected in the school context because it is counterproductive to the mission of schools and school personnel." E.W. v. Dolgos, 884 F.3d 172, 184 (4th Cir. 2018). "[T]he school setting — especially an elementary school — weighs against the reasonableness of using handcuffs." Id. Lastly, if "defendants have done little to shed any light on" their alleged use of force, the reasonableness of defendant's actions should be brought into question. Leonard, 2015 WL 8474533, at *11.

Here, Ms. Sisler argues that "[p]ublic school teachers in West Virginia are entitled to impose appropriate discipline, including physical responses to disruptive students." ECF No. 11-1. Ms. Sisler acknowledges that these physical responses may not be "excessive or unreasonable," but she does not attempt to argue that her conduct was reasonable. Id.

Plaintiffs allege that Ms. Sisler's conduct was both intentional and unprivileged. ECF No. 13. Specifically, Plaintiffs state that Ms. Sisler's conduct was not intended to impose "reasonable discipline." Id.

The Court agrees with Plaintiffs and **DENIES** the motion to dismiss as it pertains to assault and battery. First, Ms. Sisler's alleged act of binding Plaintiff U.G.'s mouth and wrists, if true, would be excessive and unreasonable.

Second, Ms. Sisler has failed to shed any light on whether U.G. was an unruly or "disorderly" student. Aside from merely denying the allegation that U.G. was not unruly, Ms. Sisler does not address any mitigating characteristics of U.G. or his behavior to justify Ms. Sisler's use of any force. Instead, Ms. Sisler merely argues she had a privilege to use force and is "absolutely immune" from tortious claims. ECF No. 14. As discussed supra, this argument fails at this stage of litigation.

**B. The Court GRANTS the motion as to Count IV (IIED) because state law prevents Plaintiffs from recovery.**

"Because an action for assault and battery allows for recovery of damages due to resulting emotional distress, a claim for the tort of outrageous conduct is duplicitous of a claim for assault and battery where both claims arise from the same event." Criss v. Criss, 356 S.E.2d 620 Syl. Pt. 4 (W. Va. 1987).

Ms. Sisler argues that Plaintiffs' claim for IIED is a conclusory legal allegation. ECF No. 11-1. Most notably, though, Ms. Sisler notes that "West Virginia law prohibits the assertion of both civil battery and outrage claims for the same conduct." Id. Plaintiffs argue that neither the Federal Rules of Civil Procedure nor the Criss decision prevent the alternative pleading of both claims. ECF No. 13. Plaintiffs acknowledge, however, that their claims for the two torts arise from the same set of facts. Id.

Here, Plaintiffs allege IIED, as well as assault and battery, under the same set of facts. Plaintiff cites no additional authority recognizing the ability for both tort claims to survive a motion to dismiss. Because West Virginia law prevents this double recovery, the Court **GRANTS** Ms. Sisler's motion to dismiss as to Count IV.

**C. The Court DENIES the motion as it pertains to punitive damages because Plaintiffs have adequately pled their claims for such relief.**

West Virginia law allows for an award of punitive damages:

> against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others.

W. Va. Code § 55-7-29. "Given that it cannot be determined at [the motion to dismiss] stage whether punitive damages are justified, the Court [should] look at only whether the plaintiffs have adequately pled their claims such that there are plausible grounds for relief under West Virginia law. Frye v. Marshall Cnty. Coal Co., No. 5:17CV88, 2017 WL 3326762, at *2 (N.D.W. Va. Aug. 3, 2017).

Ms. Sisler argues that the immunity afforded to her by the Act prevents an award of punitive damages. ECF No. 11-1. Even if she were given no immunity, Ms. Sisler continues, "Plaintiffs have utterly failed to make any factual allegations from which motive or intent could be adduced." Id. In contrast, Plaintiffs respond that because Ms. Sisler is sued in her individual capacity, the Act's bar on punitive damages does not apply. ECF No. 13. Further, Plaintiffs argue that the complaint need only "give rise to a plausible claim for punitive damages relief." Id. (quoting Kuykendall v. Miller Transporting, Inc., No. 1:19-cv-137, 2020 WL 1430469, at *5-6 (N.D.W. Va. Mar. 23, 2020)).

Here, understanding that discovery will be required to determine whether punitive damages are appropriate in this case, the Court finds that, taking the complaint as a whole, Plaintiffs adequately pleaded plausible grounds for punitive damages under West Virginia law and **DENIES** Ms. Sisler's motion to dismiss as it pertains to Plaintiffs' claim for punitive damages.

**D. The Court GRANTS the motion as it pertains to Plaintiffs Trella and William Greaser's claims for filial consortium and emotional distress.**

West Virginia limits a parent's recovery for loss of filial consortium to "the value of services which the child is disabled in performing during its minority." G.B. v. Wood Cnty. Bd. of Educ., No. 2:24-cv-00220, 2025 WL 898075, at *7 (S.D.W. Va. Mar. 24, 2025) (quoting Restatement (First) of Torts § 703 (1938)). The rationale is "parents were not understood to depend on the love and companionship of their children in the same manner in which children would depend upon parents." Losh v. Teton Transp., Inc., No. 3:09-1495, 2010 WL 5343216, at *2 (S.D.W. Va. Dec. 21, 2010).

West Virginia has refused to "recogniz[e] filial consortium claims for loss of society and companionship." Id. at *8. As the Southern District of West Virginia identified last year, "in the [15] years since Losh first announced this 'matter of first impression in West Virginia,' neither the West Virginia Legislature nor the Supreme Court of Appeals has recognized the right of parents to recover non-economic damages for loss of filial consortium." G.B., 2025 WL 898075, at *8 (quoting Losh, 2010 WL 5343216, at *3). This Court additionally declines to do so.

Plaintiffs William and Trella Greaser insist that West Virginia law recognizes damages for filial consortium in the form of "loss of services and earnings . . . for the child's injuries." State ex rel. Packard v. Perry, 655 S.E.2d 548, 556 (W. Va. 2007).

However, Ms. Sisler correctly noted that in the Amended Complaint, Plaintiffs William and Trella Greaser explicitly request damages for losing "the consortium, society, companionship, affection, support, and services of [their] son." ECF No. 8, at ¶¶ 91-92. This is the exact relief that courts in West Virginia continuously refuse to award.

Finally, Plaintiffs William and Trella Greaser's claimed "emotional distress" is derivative of their filial consortium claim. See ECF No. 8, at ¶¶ 91-92 ("[Plaintiffs have] lost the consortium . . . of [their] son, Plaintiff U.G., causing [them] to experience severe and lasting mental and emotional distress.") (emphasis added). Because their filial consortium claim fails, so too must any claim for emotional distress damages. Thus, the Court **GRANTS** the motion as it pertains to Plaintiffs Trella and William Greaser's claims for loss of filial consortium and emotional distress.

**E. The Court DENIES the motion as it pertains to Plaintiff U.G.'s claim for emotional distress.**

Plaintiff U.G. claims damages for "emotional distress, medical expenses, loss of enjoyment of life, pain and suffering, and loss of parental consortium." ECF No. 8, at ¶ 16. Plaintiff U.G. alleges they experienced emotional distress as a consequence to the alleged assault and battery by Ms. Sisler. These requested damages are separate and distinct from Plaintiffs' failed IIED

claim. Accordingly, Plaintiff U.G. has adequately pled damages for emotional distress at this stage in the litigation. Thus, the Court **DENIES** the motion as it pertains to Plaintiff U.G.'s claim for emotional distress damages.

## V. CONCLUSION

For the reasons discussed herein, the Court **DENIES** Ms. Sisler's partial motion to dismiss [ECF No. 11] as to Plaintiffs' claims for assault (Count II) and battery (Count III), as well as **DENIES** the motion to dismiss as to punitive damages and emotional distress damages for Plaintiff U.G. The Court **GRANTS** Ms. Sisler's partial motion to dismiss [ECF No. 11] as to Plaintiffs' claim for IIED (Count IV), as well as **GRANTS** the motion to dismiss as to Plaintiffs William and Trella Greaser's loss of consortium. To the extent, Plaintiffs William and Trella Greaser's claims are all derivative of the filial consortium claim, they are hereby **DISMISSED** as plaintiffs in their individual capacity.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 25, 2026

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA